# Lawrence R. DiGiansante
Attorney at Law
984 Morris Park Avenue
Bronx, N.Y. 10462
Phone (718) 822-0707

Fax (718) 904-1030

e-mail: Ldcrimlaw@optonline.net

October 19, 2021

VIA ECF AND HAND DELIVERY
The Honorable George B. Daniels
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   RE: **UNITED STATES V. Jose Rodriguez**
      <u>**S3 20-CR-57 (GBD)**</u>

Dear Judge Daniels:

  Please recall that I represent Mr. Jose Rodriguez in his defense of the above-captioned matter. Mr. Rodriguez is scheduled to be sentenced by Your Honor on October 27, 2021, at 10:00 a.m. For the reasons set forth herein, Mr. Rodriguez will respectfully request that Your Honor impose a period of incarceration of 30 months and three years of supervised release. Mr. Rodriguez will also request that Your Honor not impose a fine.

 I. PROCEDURAL HISTORY & CONDUCT AT BAR

  Mr. Rodriguez was arrested at his residence on February 18, 2020. He has been held in remand status since his arraignment. He is currently housed in MDC after spending his first 18 months at MCC. He has not received any disciplinary infractions since his incarceration.

  Mr. Rodriguez appeared before Your Honor on June 16, 2021 and pled guilty to Count 1 of his indictment.

 II. UNITED STATES SENTENCING GUIDELINES CALCULATION

  The parties and the United States Probation Department("Probation") are in accord with our respective calculations of the United States Sentencing Guidelines ("U.S.S.G. Guidelines") in this case and the defense requests that Your Honor adopt the same calculation. The Guidelines calculation results in a total offense level 26, a

criminal history category of I, a recommended range 53-68 months imprisonment and up to 3 years of supervised release, with a recommended fine range of $25,000.00 to $250,000.00.

III.   REQUEST FOR A NON-GUIDELINES SENTENCE

As Your Honor is aware, a sentencing court is required to consider the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to the criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed training or treatment; the kinds of sentences available; the kind of sentence and the sentencing ranges established by the U.S.S.G. for the crime(s) of conviction; pertinent policy statements of the U.S.S.G. Commission; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. 18 U.S.C Section 3553 (a)-(b).  It is respectfully submitted that the proposed sentence achieves the applicable, aforementioned sentencing goals and is sufficient, but not greater than necessary, to do so.

Mr. Rodriguez was born in York, Pennsylvania on November 8, 1993.  His parents, Jose Rodriguez and Yolanda Perez, also have another daughter, Destinie Rodriguez, who is Jose's best friend and who has been a constant source of support throughout his life and especially during the current circumstances.  Jose also has three other maternal half siblings with whom he has sporadic communications.

Jose grew up in a house where there was constant domestic abuse.  His mother and his half siblings bore the brunt of his father's wrath.  Fortunately, Jose and his sister Destinie were not subjects of this physical abuse, yet they endured the trauma and guilt of seeing their mother and siblings physically abused.  His mother was forced to flee York, Pennsylvania to escape the abuse with her 5 children.  His father continued to stalk his mother and she was forced to obtain orders of protection in an attempt to stop the abuse.  In 2013, Destinie gave birth to her child and their father does have some contact with them since that time and he has spoken to him since his incarceration.  Jose's mother struggled financially to raise her 5 children in the Hunts Point section of the Bronx without the aid of a male figure in the household.  Jose's neighborhood was plagued with drugs and gang activity.

Mr. Rodriguez was diagnosed with bipolar disorder and ADHD at the age of 8. He sought treatment at the Union Community Health Center in Bronx, New York. Kevin Green LMSW was his counselor until the age of 20 and Jose saw him for individual and group counseling sessions.  Jose stopped seeing Mr. Green when he enrolled in Herkimer County College in upstate New York.

Jose was placed in special education classes from 2nd through 10th grade due to his medical condition and related anger issues. He was hospitalized for mental treatment on 3-4 separate occasions at Four Winds Hospital in Katonah, New York during his youth with his last time being in 2012 when Mr. Green believed he needed inpatient treatment for depression.

Despite the hurdles he faced growing up Jose was able to graduate from Fannie Lou Hamer Freedom High School in the Bronx in 2012. He was living with his sister Destinie during his high school years. His mother had relocated with him to Tampa, Florida during his freshman year but he returned to live with his sister. Jose was able to assimilate into regular classes in the 12th grade after years of placement with special needs students.

After high school, Jose attended Herkimer County College from 2012-2014. He ultimately wanted to pursue a degree in human services so he could work with children but he left school in 2014 because he could not decide on a career path at that time. After his return to the Bronx, Jose decided that he wanted to pursue a career as an electrician. He enrolled in Apex Technical School in Long Island City, New York. He completed Apex's 900-hour electrical training program from April 27, 2015 through December 2, 2015. Attached hereto as Exhibit 1 is a true copy of his degree.

In 2015, Jose moved into the home of Nancy Dimarco. He rented a private room at 1928 Hutchinson River Parkway and he would then meet people who had a profound impact on his professional future. Unfortunately, it was at this same time that Jose made a decision that would bring him before Your Honor. While his electrical career was beginning, he would join the 59 Brims street gang.

Jose was a high-ranking member from approximately 2016 through the end of 2018. He had a conflict in his life that would only be remedied after his incarceration on this case. Attached hereto as Exhibit B are copies of Jose's W-2 statements from 2017, 2018 and 2019 and 2020. Jose worked long hours for Prince Electrical Contracting Corporation since March 17, 2016. His employers and co-workers have all provided letters of support and have assured Jose that he will have a job waiting for him when he returns home. Anthony DiMarco, his co-worker and friend, wrote Your Honor a letter describing the impact Jose has made on his life since they met in 2015. Mr. DiMarco was present for Mr. Rodriguez's plea and has remained in constant contact with him during his incarceration. They both have plans for the future when Jose returns home.

As Jose's career took off and he worked longer hours he became disillusioned with his choice to become a member of the 59 Brims. Rather than leave, he made himself less and less available to other members. By the end of 2018, he was no longer a high-ranking member. He refused to commit violent acts and his title was stripped because he did not have the time or energy to continue on that path as he was working 7 days

a week at times. The defense does not agree with Paragraph 48 of Mr. Rodriguez's PSR. He was not a high-ranking member at the time of the murders contained in this indictment and therefore he did not continue in a roll after the murders. He did not direct, participate in nor did he know about any plans for these two acts. His career was now his primary focus.

Jose was incarcerated at the time of his arrest in 2020 and has endured some of the harshest conditions imaginable since the onset of the pandemic. He was initially housed with other members of his indictment in the same unit. It was at this time that he decided to formally announce his intention to leave the 59 Brims. I submit it took more courage to make that move in an institutional setting than it would have out on the street. His declaration was not met with violence or abuse. Rather, his decision was respected by the people on his block whether a friend or perceived adversary. Upon information and belief he is the only member of this indictment who has not received a disciplinary infraction while incarcerated. I have visited him when he has been clad in a filthy mask and he described the isolation of lockdowns and no contact with friends and family and yet he exhibited no anger about his conditions. He was in the final stages of being diagnosed for sleep apnea when he was arrested. The necessity of mask wearing has not helped with his difficulty breathing and sleeping at night. When the conditions at MCC "improved" in June of this year, Jose began working as a mechanic's helper on the work detail. He was visibly excited about this and was happy to do his part to improve the conditions that he and others were living under. Unfortunately, he was transferred to MDC not long after he began his work detail. When I expressed my disappointment for him, he simply smiled and told me "it felt good while it lasted." It buoyed his spirits to think about what it will be like when he gets home.

He has used his time while incarcerated to read electrical educational books and is solely focused on resuming his career and putting this chapter of his life behind him. His support system has consisted of his long-time girlfriend Madison Murrell, Destinie, Nancy and Anthony DiMarco. They will all be present for his sentencing.

Jose remains optimistic despite his current condition. He is thinking clearly for the first time in years. He really enjoys being sober and does not miss his prior excessive use of marijuana. He related in his conversation with Probation Officer Sara K. Willette that he was smoking up to 5 joints per day from 2015-2020. He wants to continue with mental health counseling and believes with some help he can continue to remain clean and sober. He has many people he wants to pay back for their support and compassion throughout this most difficult time in his life.

IV.   CONCLUSION

Mr. Rodriguez has not backed down from any of the challenges he has faced during his young life. He was able to steer clear of any criminal justice involvement

until his participation in this case. He grew up in a home experiencing domestic violence and yet was able to emerge a young man involved in a healthy long-term relationship with Ms. Murrell. He was diagnosed with mental and learning disabilities and was able to accept counseling and graduate from high school and attend college. When he was experiencing health problems and was diagnosed as pre-diabetic with hypertension in high school, he lost 120 lbs. and no longer needed medication. He sought to better himself by going to school and learning a trade and he immediately embarked on his electrical career upon graduation. He has made an impact on the people he works with to the point where they can't believe he had either the time or inclination to participate in criminal activity. He has filed and paid his taxes since he began work and he is current on his student loans and his car payment. While his sister Destinie is helping him now, all of his bills were current when he was incarcerated.

Jose has left the gang life behind him. He has the strength and character to succeed when he is released. He has a job waiting for him when he comes home and upon release he will be living with Ms. Murrell in the Bronx. The defense respectfully requests that Your Honor sentence Mr. Rodriguez to 30 months incarceration to be followed by 3 years of supervised release with drug and mental health counseling. He has accepted full responsibility for his actions and is truly remorseful for the conduct that finds him here today.

Respectfully submitted,

*Lawrence R. DiGiansante*

Lawrence R. DiGiansante

Cc: AUSA PETER DAVIS